1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

ESTATE OF NICHOLAS ELLINGSON et al.,

12

Plaintiffs,

v.

13

CITY OF AUBURN et al.,

14

Defendants.

15

CASE NO. 2:24-cv-00404-LK

ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

16

17

18

19

20

21

22

23

24

This matter comes before the Court on Defendants City of Auburn, Gregory Lyons, and Penelope Shepherd's Motion for Partial Summary Judgment. Dkt. No. 19. Defendants seek either summary judgment on, or dismissal of, (1) Plaintiff Kasey Crich's constitutional claims against all defendants, (2) Crich's negligent infliction of emotional distress claim, (3) Crich's negligence claims against Lyons and Shepherd, (4) all claims against the City of Auburn for negligent hiring, training, and supervision, and (5) all constitutional claims against Shepherd individually. *Id.* at 7– 16. Defendants also seek dismissal of Crich's claim for damages under Washington's wrongful death statute. *Id.* at 12. For the following reasons, the Court grants Defendants' motion.

ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT - 1

# I.    BACKGROUND

On December 17, 2020, City of Auburn police officer Jennifer McNaught was dispatched to a report of a disabled recreational vehicle ("RV") blocking a residential street in Auburn, Washington. Dkt. No. 1-2 at 4; Dkt. No. 20-1 at 2. After arriving at the scene, McNaught found the RV in question stuck in the front yard of a residence and sticking out into the street. Dkt. No. 1-2 at 4; Dkt. No. 20-1 at 2. She was met by Crich, one of the occupants of the RV. Dkt. No. 1-2 at 4; Dkt. No. 20-1 at 2. Crich identified herself to McNaught and indicated that her "husband," Nick Ellingson, was also in the RV. Dkt. No. 20-1 at 2. Crich provided McNaught with Ellingson's full name and date of birth. *Id.*

McNaught ran Crich's and Ellingson's names through state and national databases and discovered that Ellingson had at least four warrants out for his arrest. *Id.* at 3. McNaught confirmed the warrants with the issuing agency, which agreed that it would take custody of Ellingson if he were arrested. *Id.* When McNaught returned to the RV and asked where Ellingson was, Crich claimed he had exited the RV and may have gone into the nearby home. *Id.* McNaught requested additional officers to help search for Ellingson, and then entered the RV with Crich's permission to confirm that Ellingson was not there. *Id.*

Once McNaught finished searching the RV, two additional Auburn police officers arrived to assist with the search: Greg Lyons and Penelope Shepherd. *Id.* As the three officers stood in the street discussing a plan, Ellingson appeared from the home, walking down the driveway toward the officers. *Id.* As Ellingson approach the officers, McNaught shouted "Hey, Nick" towards him. *Id.* After Ellingson replied, McNaught told him he was under arrest. *Id.*; Dkt. No. 21-1 at 2. Ellingson then ran up the driveway of the house, along the passenger side of a different RV parked in the driveway. Dkt. No. 20-1 at 3–4; Dkt. No. 21-1 at 2. Lyons and Shepherd chased after him,

1    while McNaught ran around the driver's side of the other RV in an attempt to cut him off. Dkt.

2    No. 20-1 at 4; Dkt. No. 21-1 at 3.

3         As Ellingson emerged past the RV into an open area of the driveway, he turned and

4    allegedly pointed what appeared to be a gun at Lyons. Dkt. No. 20-7 at 5–6. Lyons saw Ellingson

5    raise the gun toward him, and heard a series of "loud 'pop' noises [that] seemed to be coming from

6    [Ellingson's] firearm." *Id.* at 6. Lyons returned fire with his department-issued firearm. *Id.* Lyons'

7    shots struck Ellingson, who fell to the ground and stopped moving. *Id.* at 6–7. Crich then ran

8    toward the scene. Dkt. No. 20-1 at 4. Shepherd went back down the driveway and stopped Crich

9    from approaching the scene. *Id.*; Dkt. No. 21-1 at 3.[1] Crich shouted that Ellingson only had a BB

10   gun and not an actual gun. Dkt. No. 20-1 at 4; Dkt. No. 21-1 at 3. Once Lyons secured the gun,

11   McNaught rendered first aid to Ellingson. Dkt. No. 20-1 at 4. Medics arrived and took over, but

12   they were ultimately unable to revive Ellingson, who died at the scene. *Id.*

13        On December 13, 2023, Ellingson's estate and Crich filed a complaint in King County

14   Superior Court against the City of Auburn, the Auburn Police Department, Lyons, and Shepherd,

15   "seek[ing] declaratory relief and monetary damages to redress physical and mental harm and the

16   deprivation of rights accorded" to them. Dkt. No. 1-2 at 2. Each plaintiff alleges that Lyons and

17   Shepherd breached their "common law duty to act reasonably in their interactions with Mr.

18   Ellingson and to act with ordinary care" and violated the plaintiffs' Fourth and Fourteenth

19   Amendment rights by "us[ing] excessive force on Mr. Ellingson." *Id.* at 6–7. They also allege that

20   the City of Auburn (1) breached its "duty to properly hire, train, and supervise its employees . . .

21   by failing to adequately train and supervise Officers Lyons and Shepherd," (2) is "vicariously

22

23
     _____
     [1] Crich stated in her interview with detectives immediately after the incident that one of the officers pointed a taser at
24   her and that she was placed in handcuffs after Ellingson was killed. Dkt. No. 20-5 at 12, 16, 49–50. However, Plaintiffs
     do not include these assertions in their complaint. *See generally* Dkt. No. 1-2.

ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT - 3

1  liable for the negligence of Officers Lyons and Shepherd," as well as "any other negligent

2  employees," and (3) violated Ellingson's Fourth and Fourteenth Amendment rights. *Id.* at 7–9.

3  Finally, Crich alleges a negligent infliction of emotional distress claim against all defendants. *Id.*

4  at 7.

5         Defendants removed the action to this Court on March 25, 2024, alleging that the Court

6  has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367 because "Plaintiffs' various

7  claims seek damages for breach of their Fourth and Fourteenth Amendment rights pursuant to 42

8  U.S.C. § 1983." Dkt. No. 1 at 1. The Court set a trial date for October 6, 2025. Dkt. No. 12 at 1.

9  Defendants filed the instant motion for partial summary judgment on September 16, 2024. Dkt.

10 No. 19.

**II.    DISCUSSION**

11

12 **A.    Jurisdiction**

13        This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331

14 because Plaintiffs allege constitutional violations under 42 U.S.C. § 1983. *See* Dkt. No. 1-2 at 6–

15 9. The Court also has subject matter jurisdiction over Plaintiffs' state law claims pursuant to 28

16 U.S.C. § 1367(a) because such claims are sufficiently related to Plaintiffs' Section 1983 claims.

17 *See id.* at 6–7.

18 **B.    Legal Standards**

19        1.    Summary Judgment

20        Summary judgment is appropriate only when "the movant shows that there is no genuine

21 dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

22 Civ. P. 56(a). The Court does not make credibility determinations or weigh the evidence at this

23 stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The sole inquiry is "whether the

24 evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-

1   sided that one party must prevail as a matter of law." *Id.* at 251–52. And to the extent that the Court

2   resolves factual issues in favor of the nonmoving party, this is true "only in the sense that, where

3   the facts specifically averred by that party contradict facts specifically averred by the movant, the

4   motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

5          The Court will, however, enter summary judgment "against a party who fails to make a

6   showing sufficient to establish the existence of an element essential to that party's case, and on

7   which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

8   (1986). Once the moving party has carried its burden under Rule 56, "the nonmoving party must

9   come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec.*

10  *Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (cleaned up). Metaphysical doubt

11  is insufficient, *id.* at 586, as are conclusory, non-specific allegations, *Lujan*, 497 U.S. at 888–89.

12         2.   Judgment on the Pleadings

13         The Court notes that most of Defendants' arguments are really requests for judgment on

14  the pleadings under Federal Rule of Civil Procedure 12(c) because Defendants rely purely on the

15  sufficiency of the allegations in the complaint rather than on facts outside the pleadings. *See, e.g.*,

16  *Harvey v. Mid-Century Ins. Co.*, No. 2:23-cv-00873-LK, 2024 WL 2133611, at *5 (W.D. Wash.

17  May 13, 2024). "Analysis under Rule 12(c) is substantially identical to analysis under Rule

18  12(b)(6)" motion to dismiss. *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (cleaned

19  up). Specifically, under Rule 12(c), "a court must determine whether the facts alleged in the

20  complaint, taken as true, entitle the plaintiff to a legal remedy." *Id.* (internal quotation marks and

21  citation omitted). Therefore, unlike with motions for summary judgment where the entire

22  evidentiary record is considered, when reviewing motions for judgment on the pleadings, the Court

23  considers only (1) the pleadings, (2) documents incorporated by reference into the complaint, and

24  (3) matters of judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The

Court "accept[s] all factual allegations in the [relevant pleading] as true and construe[s] them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

**C.     Plaintiffs' Opposition Brief is Untimely and Violates Both this District's Local Civil Rules and this Court's Standing Order**

As a threshold matter, the Court notes that Plaintiffs' opposition brief was both untimely and violated applicable rules in multiple ways. First, as Defendants accurately observe, Plaintiffs filed their opposition a day late (October 8, 2024) without explanation, *see* LCR 7(d)(4) ("Any opposition papers shall be filed and received by the moving party no later than 21 days after the filing date of the motion."). Second, the brief does not include a word count certification in violation of Local Civil Rule 7(e)(6). *See* LCR 7(e)(6) ("When word limits apply, the signature block shall include the certification of the signer as to the number of words[.]"); *see also* Dkt. No. 22 at 9. Third, the brief is not encoded as a searchable PDF, as required by this Court's Standing Order for All Civil Cases. Dkt. No. 13-1 at 4.

The Court therefore STRIKES Plaintiffs' opposition brief. LCR 11(c). However, as discussed below, the Court's ruling on Defendants' motion for summary judgment would be the same regardless of whether it considered Plaintiffs' brief.

**D.     Crich is Not Entitled to Any Damages Under Washington's Wrongful Death and Survivorship Statues**

The Court first considers whether Crich is entitled to damages under Washington's wrongful death statute. That statute provides that "[w]hen the death of a person is caused by the wrongful act, neglect, or default of another person, his or her personal representative may maintain an action against the person causing the death for the economic and noneconomic damages sustained by the beneficiaries listed in RCW 4.20.020 as a result of the decedent's death[.]" Wash. Rev. Code § 4.20.010(1). The statute further provides that "[e]very action under RCW 4.20.010

1   shall be for the benefit of the spouse, state registered domestic partner, child or children, including

2   stepchildren, of the person whose death shall have been so caused," and "[i]f there is no spouse,

3   state registered domestic partner, or such child or children, such action may be maintained for the

4   benefit of the parents or siblings of the deceased." Wash Rev. Code § 4.20.020.

5        Defendants contend that because "Crich is not related to Mr. Ellingson," she "is not a

6   beneficiary under Washington's wrongful death and survivor statutes" and is therefore "not

7   entitled to any damages flowing from his death under those statutes[.]" Dkt. No. 19 at 12. Crich

8   responds that even though she was divorced from Ellingson, she is nonetheless a beneficiary under

9   Section 4.20.020 because she was in a "committed intimate relationship . . . with Mr. Ellingson at

10  the time he was killed." Dkt. No. 22 at 6.[2]

11       The Court agrees with Defendants that Crich cannot recover under Section 4.20.020

12  because Crich does not qualify as Ellingson's spouse. *See* Dkt. No. 23 at 1 (noting that Crich and

13  Ellingson divorced in 2013 and had not remarried). Plaintiffs appear to suggest that Crich qualifies

14  as a beneficiary because she was in a committed intimate relationship with Ellingson at the time

15  of his death. Dkt. No. 22 at 4–5. Even if Crich and Ellingson were in a committed intimate

16  relationship, Crich still would not qualify to be a beneficiary under Section 4.20.010. Because a

17  committed intimate relationship is not a marriage, *In re Marriage of Pennington*, 14 P.3d 764, 769

18  (Wash. 2000), the members of the relationship are not spouses or registered domestic partners

19  within the meaning of Washington's wrongful death statute. Because Crich was not a beneficiary

20  under Section 4.20.020 of the Revised Code of Washington, she is not entitled to damages under

21  the wrongful death statute. Summary judgment is therefore granted to Defendants on this issue.

22

23

24  [2] "Committed intimate relationships" were previously known as "meretricious relationships." *See Olver v. Fowler*, 168 P.3d 348, 350 n.1 (Wash. 2007).

ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT - 7

**E.    Crich Cannot Bring a Claim for Negligent Infliction of Emotional Distress Because She is Not a "Family Member" of Ellingson**

Defendants contend that Crich cannot bring a negligent inflection of emotional distress claim because she was not Ellingson's immediate family member at the time of his death. Dkt. No. 19 at 8–11. Specifically, Defendants aver that "only an immediate family member"—i.e., "'the class of relatives enumerated in RCW 4.20.020'—may bring a claim of negligent infliction of emotional distress." *Id.* at 9–10 (quoting *Shoemaker v. St. Joseph Hops. & Health Care Ctr.*, 784 P.2d 562, 565 (Wash. Ct. App. 1990)). Because "Crich was not related to Mr. Ellingson by blood or marriage," Defendants argue that "she is clearly outside the class of person that may bring a claim of negligent infliction of emotional distress based on injuries to Mr. Ellingson." *Id.* at 10–11. Crich responds that she qualifies as a family member because she was in a committed intimate relationship with Ellingson. Dkt. No. 22 at 4–6.

Even assuming that Crich's relationship with Ellingson qualified as a committed intimate relationship, this does not permit her to bring a claim of negligent infliction of emotional distress. The Washington Supreme Court has held that "[t]he tort of negligent infliction of emotional distress is a limited, judicially created cause of action that allows a family member a recovery for 'foreseeable' intangible injuries caused by viewing a physically injured loved one shortly after a traumatic accident." *Colbert v. Moomba Sports, Inc.*, 176 P.3d 497, 500 (Wash. Ct. App. 2008). However, it has not specified whether a person in a committed intimate relationship qualifies as a "family member." Where the state's highest appellate court has not spoken on an issue of state law, a federal court's role is to predict what decision that court would reach. *Westport Ins. Corp. v. California Cas. Mgmt. Co.*, 916 F.3d 769, 774 (9th Cir. 2019). Every Washington court to address this issue has concluded that a claimant must be related by blood or marriage to bring a claim for negligent infliction of emotional distress. As the court explained in *Watson v. City of*

*Vancouver,* in *Percival v. General Electric Company,* 708 F. Supp. 2d 1171 (W.D. Wash. 2010), the one case to expressly permit someone not listed in the wrongful death statute to recover,

> Judge Lasnik discussed the history of the claim and the various cases addressing it, and concluded that the victim's grandchildren (who had watched their grandmother burn to death) could assert bystander NIED claims. Even *Percival,* however, concluded that the Washington Supreme Court would limit claim[s] to plaintiffs who are related to the victim by marriage or blood:
>
> > In sum, the Washington State Supreme Court requires that a bystander be a "relative" or "family member" of the person harmed[.]"
>
> *Percival,* 708 F.Supp.2d at 1177. But even if the list includes grandchildren (who are not listed in the wrongful death statute), it does not support Plaintiff Osbeck's claim; she was not related to Watson by blood or marriage at the time of the incident.
>
> There is no authority, and no reasonable basis for concluding, that the Washington Supreme Court would permit a plaintiff in Osbeck's position to pursue a bystander NIED claim under Washington law.

No. C13-5936-RBL, 2014 WL 1778401, at *2 (W.D. Wash. May 5, 2014). Similarly, in *Lindsey v. Visitec, Inc.*, the court held that the plaintiff—the decedent's fiancé and "a friend and lover of the deceased for two and one-half years"—could not recover for negligent infliction of emotional distress resulting from her partner's death after the defendant's car struck the plaintiff and her partner head-on. 804 F. Supp. 1340, 1344 (W.D. Wash. 1992). Citing *Shoemaker v. St. Joseph Hospital & Health Care Center*, 784 P.2d 562, 564 (Wash. Ct. App. 1990), among other cases, the court in *Lindsey* emphasized that "Washington courts have clearly indicated an unwillingness to extend recovery beyond family members described in the State's wrongful death statute and this Court is bound to apply Washington law." *Lindsey*, 804 F. Supp. at 1344. In *Shoemaker*, the Washington Court of Appeals held that "[o]nly an immediate family member may bring an outrage claim that is based on conduct directed at a third person," and "[t]he same is true for claims of negligent infliction of emotional distress." 784 P.2d at 564. The Court of Appeals further observed

ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT - 9

1   that "an immediate family member means a person in the class permitted to bring a wrongful death

2   action." *Id.*; *cf. Vance v. Farmers Ins. Co.*, 1 Wash. App. 2d 1007, 2017 WL 4883353, at *4 (2017)

3   ("The equitable CIR [(committed intimate relationship)] doctrine in Washington evolved to protect

4   unmarried parties who acquire property during their relationship," but "[w]e adhere to the general

5   rule in Washington that a spouse does not have a claim for loss of consortium when the injury to

6   the spouse that causes the loss occurs before marriage."). Because "the extension of property

7   distribution rights of spouses to partners in meretricious relationships does not elevate meretricious

8   relationships themselves to the level of marriages for any and all purposes," *Davis v. Emp. Sec.

9   Dep't*, 737 P.2d 1262, 1266 (Wash. 1987), and Washington courts have limited bystander

10  negligent infliction of emotional distress claims to relatives, it is likely that the Washington

11  Supreme Court would hold that a person in a committed intimate relationship may not bring a

12  claim for negligent infliction of emotional distress arising from injury to that person's partner. *See

13  Hester v. Nat'l R.R. Passenger Corp.*, No. C20-6202BHS, 2021 WL 2949781, at *4 (W.D. Wash.

14  July 14, 2021) ("[A] true bystander—one who simply witnesses the aftermath of an accident—

15  must at least be a relative to recover NIED damages."); *see also Smith v. Toney*, 862 N.E.2d 656,

16  660 (Ind. 2007) ("Most courts that have considered this issue have disallowed bystander recovery

17  for negligent infliction of emotional distress by persons engaged to be married or involved in

18  cohabiting but unmarried relationships." (footnotes omitted)); *Nees v. City of Phoenix*, No. CV-

19  21-01134-PHX-GMS, 2022 WL 17976322, at *3 (D. Ariz. Dec. 28, 2022) (same). Crich's

20  negligent infliction of emotional distress claim is therefore dismissed as a matter of law.

21  **F.      Crich Cannot Assert a Claim for Alleged Violations of Ellingson's Constitutional
            Rights**

22
            Plaintiffs' complaint alleges that Crich "suffered damages" from Officer Lyons' and
23
    Officer Shepherd's violations of Mr. Ellingson's Fourth and Fourteenth Amendment rights to be
24

ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT - 10

1    free from excessive force and unreasonable seizure. Dkt. No. 1-2 at 6–7; *see also id.* at 9–10.

2    Defendants argue that because these Fourth and Fourteenth Amendment claims are "based upon

3    the alleged violation of *Mr. Ellingson's* constitutional rights," they must be dismissed. Dkt. No.

4    19 at 7–8 (emphasis in original). Plaintiffs do not directly address this issue in their opposition

5    brief. *See generally* Dkt. No. 22. Instead, they explain that their claims for the alleged "violation[s]

6    of Mr. Ellingson's constitutional rights are being brought in this action by . . . his estate," which is

7    being administered by Dalynne Singleton. Dkt. No. 22 at 6; *see also* Dkt. 24-2 at 2–3 (notice of

8    appointment of Singleton).

9      The Court agrees with Defendants that any Fourth or Fourteenth Amendment claims

10   advanced by Crich based on violations of Ellingson's constitutional claims must be dismissed as

11   a matter of law. In a Section 1983 action, "the survivors of an individual killed as a result of an

12   officer's excessive use of force may assert a Fourth Amendment claim on that individual's behalf

13   if the relevant state's law authorizes a survival action." *Moreland v. Las Vegas Metro. Police*

14   *Dep't*, 159 F.3d 365, 369 (9th Cir. 1998), *as amended* (Nov. 24, 1998). "The party seeking to bring

15   a survival action bears the burden of demonstrating that a particular state's law authorizes a

16   survival action and that the plaintiff meets that state's requirements for bringing a survival action."

17   *Id.* Because Crich was not Ellingson's spouse and therefore cannot bring such claims in accordance

18   with Washington's wrongful death or survivorship statutes, Crich's claims based on constitutional

19   violations against Ellingson are dismissed. *See Matter of Est. of Blowers*, 200 Wash. App. 1056,

20   2017 WL 4355904, at *4–5 (Wash. Ct. App. 2017).

21   **G.    Plaintiffs' Constitutional Claims Against Officer Shepherd Fail**

22     Defendants next contend that Plaintiffs' Fourth and Fourteenth Amendment claims against

23   Officer Shepherd should be dismissed because "she did not shoot Mr. Ellingson, did not otherwise

24   use any force at all against him or Ms. Crich, and had no interaction with either sufficient to impose

1    liability here" under either constitutional provision. Dkt. No. 19 at 14. Plaintiffs do not oppose

2    Defendants' arguments with respect to Ellingson, and instead focus only on constitutional claims

3    with respect to Crich. Dkt. No. 22 at 7–8. Specifically, Plaintiffs assert for the first time in their

4    opposition brief that after Ellingson was shot, Officer Shepherd "pulled out her taser and held it

5    on Ms. Crich in order to detain her" before proceeding to handcuff Crich and place her under arrest

6    even though she had no outstanding warrants, had not committed a crime, and was otherwise

7    cooperating with McNaught during the incident. *Id.* at 7. Plaintiffs contend that this alleged

8    "unlawful arrest[]" violated Crich's constitutional rights, and therefore partial summary judgment

9    should be denied. *Id.* at 7–8.

10          The Court agrees with Defendants. The uncontested facts in the record show that Officer

11   Shepherd did not seize or use any force against Ellingson and therefore cannot be held liable for

12   any constitutional violations with respect to him. With respect to Plaintiffs' new assertions that

13   Officer Shepherd violated Crich's rights, Plaintiffs cannot amend their complaint via an opposition

14   brief. *See La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083,

15   1089 (9th Cir. 2010) ("[The plaintiff] may not effectively amend its Complaint by raising a new

16   theory . . . in its response to a motion for summary judgment."); *Coleman v. Quaker Oats Co.*, 232

17   F.3d 1271, 1292–93 (9th Cir. 2000) (plaintiffs "cannot turn around and surprise the [defendant] at

18   the summary judgment stage" with a new theory of liability).[3] These assertions were never

19   mentioned in the complaint; indeed, the complaint only alleges that Officer Shepherd used

20   excessive force on Mr. Ellingson, and is bereft of any mention of an arrest of, or force used against,

21   Crich. Dkt. No. 1-2 at 6–8.

22

23

24   [3] The deadline for Plaintiffs to amend their complaint was August 6, 2024. Dkt. No. 12.

ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT - 12

1    For these reasons, the Court grants summary judgment to Defendants on Plaintiffs' Fourth

2  and Fourteenth Amendment claims against Officer Shepherd.

3  **H.    Crich Has Not Stated Any Facts Supporting Her Claim of Negligence**

4    Defendants also contend that Crich has failed to state a personal claim for negligence

5  against the defendant officers. Dkt. No. 19 at 11–12. Specifically, they note that Crich "does not

6  allege the officers acted negligently in their interactions with her in any way," and instead "only

7  claims she suffered damages as a result of the officers' actions toward Mr. Ellingson." *Id.* at 12

8  (emphases removed); *see also* Dkt. No. 1-2 at 6 ("Defendant[s] had a common law duty to act

9  reasonably in their interactions with Mr. Ellingson and to act with ordinary care. Defendant[s]

10  breached the duty to act reasonably and with ordinary care and []proximately caused the death of

11  Mr. Ellingson and the damages suffered by the Plaintiff Ms. Crich."). Plaintiffs' only

12  counterargument is that Shepherd "was clearly negligent when [she] arrested Ms. Crich," again

13  raising new assertions of an unlawful arrest that were not raised in the complaint. Dkt. No. 22 at

14  8–9.

15    The Court agrees that Crich has failed to state a personal claim for negligence against the

16  defendant officers. To establish negligence, a plaintiff must prove: (1) the existence of a duty owed

17  to her; (2) a breach of that duty; (3) a resulting injury; and (4) that the breach was the proximate

18  cause of the injury. *N.L. v. Bethel Sch. Dist.*, 378 P.3d 162, 165–66 (Wash. 2016). Plaintiffs do not

19  allege in their complaint any duty that the officers had towards Crich; Plaintiffs only allege that

20  "Defendant[s] had a common law duty to act reasonably in their interactions with *Mr. Ellingson*

21  and to act with ordinary care," which Defendants "breached" and "approximately [sic] caused the

22  death of Mr. Ellingson and the damages suffered by" Crich. Dkt. No. 1-2 at 6 (emphasis added).

23  All damages suffered by Crich are, again, premised on a breach of duty to Ellingson. Thus, even

24  if Plaintiffs adequately alleged that the defendant officers had a common law duty to act reasonably

1    in their interactions toward Crich and to act with ordinary care, the complaint does not contain any

2    allegations regarding a breach of that duty as to Crich. Crich's personal claim for negligence is

3    therefore dismissed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)

4    ("Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts

5    alleged under a cognizable legal theory.").

6    **I.      Plaintiffs' Negligent Hiring, Training, and Supervision Claims Fail as a Matter of
            Law**

7
            Finally, Defendants claim that because Lyons and Shepherd "were acting within the course

8    and scope of their employment when the incident occurred," "Plaintiffs' continued litigation of

9    claims for negligent hiring, training, and supervision against the City are wholly improper, and

10   should be dismissed with prejudice." Dkt. No. 19 at 14. Plaintiffs do not address Defendants'

11   argument in their opposition brief. *See generally* Dkt. No. 22.

12           The Court agrees that these claims should be dismissed. Under Washington law, "causes

13   of action for negligent hiring, retention, supervision and training are analytically different from

14   vicarious liability," and "arise when the employee is acting outside the scope of employment."

15   *Evans v. Tacoma Sch. Dist. No. 10*, 380 P.3d 553, 564 (Wash. Ct. App. 2016) (citing *Niece v.*

16   *Elmview Grp. Home*, 929 P.2d 420, 427 (Wash. 1997)). "They are based on a concept that the

17   employer's *own* negligence is a wrong to the injured party, independent from the employer's

18   liability for its employee's negligence imputed by the doctrine of respondeat superior." *Id.* "In fact,

19   an injured party generally cannot assert claims for negligent hiring, retention, supervision or

20   training of an employee when the employer is vicariously liable for the employee's conduct." *Id.*

21   "[T]herefore, a claim for negligent hiring, training, and supervision is generally improper when

22   the employer concedes the employee's actions occurred within the course and scope of

23   employment." *LaPlant v. Snohomish Cnty.*, 271 P.3d 254, 257 (Wash. Ct. App. 2011).

24

ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT - 14

Here, Defendants admit in their answer that Lyons and Shepherd "are or were employees of the City of Auburn and they were at all material times during the incident at issue in this lawsuit acting in the course and scope of their employment." Dkt. No. 9 at 2. The appropriate theory of liability for the City is therefore vicarious liability, not negligent hiring, training, and supervision. *LaPlant*, 271 P.3d at 256–57 ("[W]hen an employee commits negligence within the scope of employment, a different theory of liability—vicarious liability—applies."). The Court therefore dismisses Plaintiffs' negligent hiring, training, and supervision claims against the City.[4]

### III.  CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion for Partial Summary Judgment. Dkt. No. 19. Summary judgment is GRANTED in favor of Defendants on Plaintiffs' constitutional claims against Shepherd. Plaintiffs' negligent hiring, training, and supervision claims, as well as Crich's negligent infliction of emotional distress claim, constitutional claims, and negligence claims against defendant officers, are DISMISSED without leave to amend. *See Harvey*, 2024 WL 2133611, at *6. Finally, Crich is not entitled to damages under Washington's wrongful death statute.

Dated this 3rd day of February, 2025.

Lauren King
United States District Judge

---

[4] The Court notes that Plaintiffs' vicarious liability claim against the City remains. Dkt. No. 1-2 at 7 ("Defendant [City of Auburn] is also vicariously liable for the negligence of Officers Lyons and Shepherd[.]").

ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT - 15